**William L. MATHESON, Plaintiff,**

v.

**WHITE WELD & CO. et al., Defendants.**

**No. 71 Civ. 3304.**

United States District Court,
S. D. New York.

Oct. 29, 1971.

Anderson, Allegaert & Russell, New York City, for plaintiff by Donald A. Herner, New York City, of counsel.

Morrison, Paul & Beiley, New York City, for defendants by Peter H. Morrison, New York City, of counsel and Hughes, Hubbard & Reed, New York City.

GURFEIN, District Judge.

This is a motion pursuant to Rules 9(b) and 12(b) of the Federal Rules of Civil Procedure to dismiss the third, fourth, fifth and seventh claims for relief on the ground that the Court lacks jurisdiction over the subject matter and that each fails to state a claim upon which relief can be granted. The motion seeks further to dismiss the first, second and sixth claims for relief on the separate ground that there is no properly asserted Federal claim to which said claims could be pendent.

The complaint is by a customer against a stock broker (White Weld) a customer's man (Dunne) and the corporation whose stock was involved in the relationship between the customer and the stock broker (Cognitronics). The complaint alleges that in 1969 the plaintiff purchased 3,100 shares of Cognitronics common stock and that he sold these shares at a loss in 1970. No diversity of citizenship is claimed.

The early paragraphs of the complaint (¶¶1–14), which are incorporated by reference into the claims for relief under attack may be summarized in essential part as follows.

Dunne and White Weld held themselves out as experts in the business of advising customers with respect to investments. The plaintiff was told that White Weld made a specialty of computer and electronics related stocks and that it had a special "expertise" with respect to said stocks; that Dunne advised plaintiff early in 1969 that it was time to purchase Cognitronics; that "Dunne made several representations concerning Cognitronics including that White Weld had a Cognitronics machine in its office with which the only problem was that it was not as fast as they hoped but could be speeded up with no problem." It is alleged that in reliance on the advice and representations the plaintiff purchased 3,100 shares of common stock of Cognitronics for $113,376.01. The price of the stock then commenced falling. At various times during the Fall, Dunne advised plaintiff that there was nothing wrong with the company and that the stock was only acting in accordance with general market conditions. It is alleged that Dunne made or failed to make other representations concerning Cognitronics. On at least two occasions upon specific request for advice Dunne advised plaintiff not to sell. It is then alleged that in late 1969 when the Cognitronics stock was selling at about one-third of the purchase price representatives of White Weld made several factual representations concerning Cognitronics (without stating what they were) which subsequently on information and belief proved to be false and misleading. It was recommended that the plaintiff continue to hold his stock. In July 1970, the plaintiff sold some of his stock, and in early September 1970, Dunne advised plaintiff that it was time to sell his Cognitronics stock, which he did at a loss. It is further alleged that shortly after the plaintiff sold his Cognitronics stock the price increased; that when the plaintiff inquired of Dunne as to the reason for the increase Dunne replied that it was probably because of the press release relating to a recently completed financing in which White Weld played a major role.

The third claim for relief charges a violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder. It alleges that White Weld and Dunne were negligent in making statements which proved to be false and misleading and in failing to state material facts as well as in failing to investigate whether the statements they made were false and misleading and whether they were omitting to state material facts. There is no allegation as to what statements were made or in what respect they were false and misleading, nor are the omissions stated or the grounds for believing that the omissions were misleading. The fourth claim for relief alleges that White Weld and Dunne knew or should have known of the falsity and misleading character of the statements they made or of their omissions and that such conduct violated Section 10(b) and Rule 10b–5. The complaint does not indicate what the alleged statements or omissions were or how they were false.

The fifth claim for relief charges a violation of Section 12(2) of the Securities Act of 1933 as amended, in that the same defendants made sales of Cognitronics stock to the plaintiff through the use of oral or written prospectuses which contained untrue statements or

failed to contain statements which made the prospectuses or oral communications false and misleading. It pleads reliance and damage, but there is no statement specifically as to what these statements were or of what the omissions consisted.

The seventh claim for relief charges a violation of Section 10(b) of the 1934 Act and Rule 10b–5 and alleges that defendant Cognitronics knowingly provided or knowingly failed to provide information to White Weld and Dunne which was used by White Weld and Dunne to induce customers to purchase Cognitronics stock. The complaint alleges that the information or lack thereof proved to be false and misleading.

■■ The defendants' motion for a dismissal of the complaint based on a failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure must be granted. Rule 9(b) requires that " * * * the circumstances constituting fraud * * * shall be stated with particularity." It is now quite clear in this Circuit that allegations with respect to 10b–5 violations will not pass scrutiny if they do not allege with some specificity the statements allegedly constituting the fraud. Mere conclusory allegations to the effect that defendant's conduct was fraudulent or in violation of 10b–5 are insufficient. Shemtob v. Shearson, Hammill & Co., Inc., 448 F.2d 442 (2 Cir. 1971). The complaint here does not measure up to these minimum requirements. Moreover, the allegation in the third claim for relief that the defendants White Weld and Dunne were negligent in their conduct and, hence, violated Section 10(b) and Rule 10b–5 is insufficient. We have now been instructed that claims under Section 10(b) or

Rule 10b–5 require for sufficiency "allegations of fact amounting to scienter, intent to defraud, reckless disregard for the truth, or knowing use of a device, scheme or artifice to defraud. It is insufficient to allege mere negligence, S. E.C. v. Texas Gulf Sulphur, 401 F.2d 833, 867–868 (2d Cir. 1968); Globus v. Law Research Service, Inc., 418 F.2d 1276, 1290–1291 (2 Cir. 1969)." Shemtob v. Shearson, Hammill & Co., Inc., *supra.*

■ We must conclude, therefore, as did the Court of Appeals in *Shemtob* that "in the absence of any allegation of facts amounting to fraud or scienter," the claims for relief must be dismissed.

■ In view of this determination, the defendants argue that the other claims for relief, the first, second and sixth claims, must also be dismissed since they are common law claims and pendent jurisdiction will now fall. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). These claims allege that White Weld by holding itself out as an expert created a special relationship with the plaintiff and that it breached its duty; that it was negligent in its advice and failed to adhere to standards of persons in the business of giving investment advice; and that Cognitronics either negligently provided false information or failed to provide information to White Weld and Dunne which was in turn relied upon by customers in the purchase of Cognitronics stock. The plaintiff contends that the first and second claims for relief are not based solely on the common law but spell a violation of Section 15(c) (1) of the 1934 Act (15 U.S.C. § 78o).[1] The

1. 15 U.S.C. § 78o(c) (1) reads as follows:

"(c) (1) No broker or dealer shall make use of the mails or of any means or instrumentality of interstate commerce to effect any transaction in, or to induce the purchase or sale of, any security (other than commercial paper, bankers' acceptances, or commercial bills) other-

wise than on a national securities exchange, by means of any manipulative, deceptive, or other fraudulent device or contrivance. The Commission shall, for the purposes of this subsection, by rules and regulations define such devices or contrivances as are manipulative, deceptive, or otherwise fraudulent."

contention is that brokers who hold themselves out as experts owe a duty to their customers and that this duty is "at least partially a creature of the 1934 Act." No case is cited which has supported the theory that the failure of a broker to live up to minimum standards creates liability under the 1934 Act, rather than because of his common law responsibility. Since it may be possible, however, in some situations to create a cause of action against a broker based on the violation of a specific rule, *cf*. Colonial Realty Corp. v. Bache & Co., 358 F.2d 178 (2 Cir. 1966), the Court notes as well that the required specification of fraud which would be required to make a Section 15 violation is missing.

Since the dismissal here is, at the moment, on technical pleading grounds it may be possible for the plaintiff to allege facts showing the circumstances of the alleged fraud. He is, therefore, given leave to file an amended complaint.

So ordered.